Good morning. Good morning. May it please the Court, I'm Teresa Reneker on behalf of the appellant, Mr. O'Rourke. I would like to reserve three minutes for rebuttal. All right. Can you move the microphone just a little closer? It's a big room in here. Thank you. Thank you. In this case, ERISA prohibits any forfeitures of accrued benefits. And it carves out a narrow exception for multi-employer plans that seek to prohibit retirees from receiving pensions while working in employment that is detrimental to the interests of the participants in the plan that have negotiated for the benefits through their collective bargaining agreements. So in other words, a multi-employer plan can prohibit re-employment of a retiree for the purpose of protecting bargain-for wages and working conditions. Here, that exception is being turned on its head. It's being used, rather than to protect bargain-for wages and working conditions, it's being used to undermine the union, to penalize an elected union official for serving in his elected position by forfeiting his pension while he serves as a vice president of the IBEW. There is nothing in this pension plan that allows the trustees to forfeit Mr. O'Rourke's pension in order to penalize him for working for the union. The plan specifies that pension benefits can only be forfeited for work in the branches of the electrical trade in the United States. Mr. O'Rourke is not working in a branch of the electrical trade. Whether one understands trade as meaning commerce or as meaning a skilled occupation, Mr. O'Rourke is not engaged in electrical commerce, nor does he work in a skilled electrical occupation. But he's an officer in the union that handles electrical workers, right? It organizes electrical workers among other occupations, yes. But that's and that was his trade at one time. His trade at one time was that of an electrician. That is true. And that, I don't, it's hard to know what a branch of the electrical trade is, but it seems to mean everything to do with the electrical trade. I mean, is this is not a union, a branch, or working in a union part of the electrical trade? No, I would not agree with that. The term branches of the electrical trade is actually a term of art in the IBEW. And we've cited to the IBEW constitution which describes the five branches of the electrical trade, which are construction, broadcast, railroad. They do not include working for the union. So just as being the president of the nurses union is not the same as nursing, being a vice president of the electrical workers union is not the same as being an electrician. If we were taking this fully looking at it, I can see that your argument that you give makes sense. But that isn't the way we get to do it. We have to defer to the people who have made the interpretation. And either side is logical. It has some teeth to it, some understanding to it. And so my main problem is, why should we interfere with the people whose agreement it is? Why should we not defer to them as long as it's a reasoned decision? Now, your reasons may be better than theirs, but if it's a reasoned decision, why should we interfere with their separate contractual responsibility? It is not a reasoned decision. It fails all three of the criteria that this Court has articulated for what makes a decision not an abuse of discretion. So first of all, it renders nugatory the plan's definition of electrical industry as electrical trade. The trustees said, we're not denying this on the basis that he's working in the electrical trade. We're denying it on the basis that the electrical trade and the electrical industry are coextensive and he's working in the electrical industry. That's not what the plan says. The plan says the electrical industry is defined as the electrical trade. So the trustees must look at whether he's working in the electrical trade. But they did not do that. So you've — your interpretation is a better one than theirs. But that isn't the point. Do they have a right to interpret it that — do they have the right to decide is there an abuse that they have done because they interpret it differently from you? Yes. In addition to rendering the plan's definition of electrical industry nugatory, the interpretation also is inconsistent with the purpose of the plan. And that's one of the factors set forth in Tapley. A reasonable construction of the plan must be consistent with the plan's purpose. And as I began by saying, the purpose of this suspension of benefits provision is to protect bargain for wages and working conditions, not to prevent union alumni from working as union officers. So because it's inconsistent with the purpose of the plan provision, the interpretation is an abuse of discretion. The interpretation is whether what he's doing now violates. They said it was, that it's part of the electrical scheme of things. They use different words. But you can see it's — they're both electrical in a sense. So why should we say, because you would prefer them to interpret that differently, that we should move in and say, no, you've got to interpret it a different way? Because the interpretation that the trustees have advanced, that the trustees have articulated, renders the plan's definition nugatory. It is contrary to the common-sense understanding of what the electrical trade is, and it is inconsistent with the purpose of the plan. And each of those independently is a basis to find an abuse of discretion. The district court went down the wrong path here when it decided that Mr. O'Rourke's employment could be prohibited because there is a trade of union official that he's practicing. The district court looked at whether this employment could be prohibited if Mr. O'Rourke was over 65, and then it extrapolated from the regulations that would apply if Mr. O'Rourke was over 65 to decide that because his work in the Court's view as a union vice president is similar in some respects to his work as a union business manager, he's practicing a separate trade. He's practicing a separate set of skills, not those of an electrician, but those of a union official. And the district court — that is not standard under the plan. Standard under the plan is whether Mr. O'Rourke is working in the electrical trade. And then they interpreted in the trade is different from you. But if I understand correctly, the purpose of all this is not — is so that somebody doesn't get the retirement pay plus being in the trade, and so they're twofering and taking money out. That is not actually the purpose. The purpose is to prevent a retiree from taking employment that has the potential to undercut the wages and working conditions of union members. Sotomayor, it's like a soft non-compete, so to speak. And I'm sorry? I said it's like a soft non-compete clause. It is like — it is exactly a non-compete clause. The concern is that a pensioner will be able to work in a lower-wage, non-union electrician job while being subsidized by the plan. And that is what Congress allowed — that is the circumstance where Congress allowed a forfeiture. Congress said union management negotiated plans, multi-employer plans, can protect the bargain-for wages and working conditions by preventing pensioners from competing with active union members for employment in the trade. Yeah. That is the purpose. Yeah. But that purpose is not served here, where Mr. — Is that set out in the plan, that purpose? Or are you just saying that's what everybody knows? The plan doesn't specify that purpose, but it clearly shows that it is trying to effectuate that purpose because it says that benefits can be suspended while the pensioner is working in the electrical trade. Electrical trade, which is part of the electrical industry, right? Well, which is part of the electrical industry, yes. But the plan for retirees before age 65 defines the electrical industry as the electrical trade. So we're not looking at whether Mr. O'Rourke is working in the electrical industry, only at whether he's working in the electrical trade, which he is not, both because working as a union official is not practicing the trade of an electrician and because the IBEW is not a union solely of electricians. But it's the — it is the main union that deals with electrical workers, right? That is true. But at Mr. O'Rourke's level, the locals for which he's responsible include locals that are unions of police officers, teachers, assemblers of medical devices. There are many different occupations represented among the locals of the 9th District IBEW. Just as the graduate teaching assistants at UC Berkeley are members of the United Auto Workers, even though they don't make cars, many members of the IBEW are not actually electrical workers. And Mr. O'Rourke, in his position as the 9th District vice president, has responsibility for workers in all kinds of occupations. Do you agree that our review is abuse of discretion? I agree that the review is for abuse of discretion. I think there is some skepticism warranted here because the — because there is evidence of bias against Mr. O'Rourke in the record, that the trustees' actions in ignoring their own lawyers' advice about the — I really don't understand what you just told me. Abuse of discretion is abuse of discretion. But I haven't heard this — the tail end that you put on it. I understand what happened there. There is some conflict that was going on among the parties. But abuse of discretion is abuse of discretion. I don't — what case do you have that we have skepticism? And what does that mean when we have to write an opinion? So, yes. That would be this Court's en banc decision in Abatey. Which — in which the Court said that the discretion — that the deference to a plan administrator's decision can be tempered by skepticism in certain circumstances, including where there are procedural irregularities in the conduct of the administrative process. And that's what happened here. The — there were procedural irregularities in that the Court — in that the trustees ignored their own lawyers' advice, departed from their prior interpretations of the plan. Wait a minute. Ignoring a lawyer's advice by the board? The board is the one that makes the decision. The lawyer is the one that assists them. And if they don't follow the lawyer, then we can add skepticism to our abuse of discretion standard.  Is that what you're saying? I am saying that under the circumstances of this case, there are cumulative facts, including ignoring the lawyers, including — Well, if you get the cumulative facts, then you've got a big problem, but I've — because I — we don't have time to accumulate. But I'm just figuring — trying to figure what test I'm going to use when I get out. It's not that we favor one side or another. We just have a test, and a test is abuse of discretion. But what you're saying is any time you disagree with a lawyer, then we toss the abuse of discretion. And we have some other standard we use. I'm not sure where you get that. I am not going that far, Your Honor. I am saying that under the circumstances of this case, where there are various indicia of bias against Mr. O'Rourke, that that's a procedural irregularity that the court should take into consideration in selecting the degree of deference that it applies to the trustee's decision. It should also apply the three Tappley factors. Was there some finding made that there was this bias against him? Was there a factual finding made? No. This was summary judgment. There were no factual findings made, but the — there is, I think, a strong inference of bias against Mr. O'Rourke from the circumstances. May I ask you — we'll give you some time for rebuttal. What do we make of the planned counsel's determination that this kind of work isn't under the prohibited work? That came after he left? It did. It did. There was a board action in 2010 where the board said, we want to be sure that this type of employment is not going to be prohibited employment under the terms of our plan, and we're directing planned counsel to determine if any changes to the plan are necessary to effectuate that result. Several years later, three and a half years later — It takes a long time to get a legal opinion. Yes. The lawyers did come forward with a legal opinion saying no change to the plan is necessary because this type of work, whether for the union or for the employer association, is not prohibited employment because it's not work in the electrical trade. But that didn't do your client any good? Unfortunately, no. The trustees decided that they — the trustees disagreed with that opinion. And I think there's a strong inference that they did so because they wanted to reach a particular result in this case with respect to Mr. O'Rourke. Well, it was brought up once to amend it, and it never did pass, right, just discussed. There was an amendment at one point that was proposed and not adopted. Never passed. Yes. Thank you. Thank you, Your Honor. May it please the Court, Clarissa Kong for Appelee's Northern California Electrical Workers' Pension Plan and the Board of Trustees. The Board did reach a reasonable decision to deny Mr. O'Rourke's benefit claim and appeal.    firmly grounded in the plain language of the plan, which sets up an equivalence between electrical industry and the electrical trade. The Board's reading of the plan's language did not render any term nugatory. The prohibited employment rule is a broad rule. The ERISA Section 203 reference that my colleague on the other side has is not applicable. ERISA does not have a rule under Section 203 that concerns early retirement. That's the benefit at issue here. The regulations under Section 203 are also not applicable. Congress, in providing the Secretary of Labor authority to pass those looking at Section 203 and that section concerns normal retirement benefits. The reading of electrical industry as a very broad category by the Board of Trustees is consistent with the Board's broad reading of the prohibited employment rule and a concern that the plan should only be paying benefits to individuals who have retired and who have left the electrical industry. Which branch of the electrical industry was Mr. O'Rourke working in? He was working for a union that specifically is one that covers electrical workers and among others. And so which branch of that? There's other places that talk about the different kinds of trades that you have in the electrical industry. So which specific branch is he? I think it has to do with the fact that the IBEW, it has the word electrical in its name. I understand it does, but, you know, people belong to all kinds of unions that don't necessarily cover their industry. So my question is, is this a branch of the electrical industry? Because you can't read out the word branch, can you? Well, the plan's definition is prohibited employment in the early retirement context is performances of services in any capacity in the electrical industry. The electrical industry is then defined as a term as any branch or work in any branch of the electrical trade. Mr. O'Rourke is working for a union whose function is to provide direct representation and to support workers working in the electrical trade. It doesn't matter whether his work for the IBEW is administrative or actively working as an electrician. Industry and trade refer to both types of service. Does this union have an office around some of the industry or out in a different place? Do we know that? Are you talking about geographic? Some unions have the representatives right on the plant location. If you're working on airplanes, you've got your union people right there in the same building. Your Honor, that is not part of the record, and my understanding is that the international, the IBEW does oversee the electrical workers. I'm not sure whether there are representatives at each job site. I'm sure there are some shop stewards who are part of the management. They're working. Shop stewards are working actively in an electrical job, aren't they? I believe so, but that's not part of the record. And I think if I could just address the issue on branches of the electrical trade. My colleague on the other side said that the IBEW Constitution, she referenced that the Constitution does specify branches of the electrical trade. That's perhaps a misstatement. The IBEW Constitution, which is found at Excerpts of Record 511, defines branches of the IBEW. I think that is different from branches of the electrical trade. That may be. I still don't understand what a branch is. I mean, it must be given some meaning, and I haven't quite heard any definition from you. So what is the definition of a branch of the electrical trade? Any segment of the electrical industry, electrical trade, for example, being an officer in a union that represents electrical workers would be within the branch of the electrical trade, within the electrical industry. The purposes of the suspension of benefits provision is not simply to protect bargaining work, but it is also, in this case, with regard to early retirement benefits, to ensure that benefits in a retirement plan are paid to those who are indeed retired and not working in the industry. The district court did look at, as an analogy, the post-age 65, the normal retirement definition of prohibited employment and the regulations under ERISA 203. In that respect, the court looked at those regulations and the post-65 definition of prohibited employment as an analogy, in that the work that can be done after age 65 is broader than the work that could be done in an early retirement situation and within the electrical industry. Retirees who are older than age 65 may work in an occupation that is within the electrical industry. It's restricted as to the number of hours, the geographic location, whether there are job skills being used that were similar to those of the participants working in covered employment. The definition under the early retirement prong of prohibited employment is much broader. It's a single sentence. And if the work is in any capacity in the electrical industry, it is prohibited employment. There is no procedural irregularity here with regard to the board's consideration of Mr. O'Rourke's claim and appeal. The board did consider the 2010 proposal that proposed consideration of a change in the prohibited employment definition and employment rule to allow people to both get their retirement as well as work for an international union such as the IBEW. The board of trustees considered an amendment in 2012. At that time, the board elected not to pass it.  And discussion on that matter was resumed when Mr. O'Rourke submitted his pension application. Did the board ever put in the document that one of the purposes was to keep people out who would be in the union representing the workers?  That was also not part of the amendment. There are meeting minutes from various trustee meetings where the prohibited employment rule was considered over the years. They're part of the record. They go back, I believe, as far as maybe 2002, 2004. One of the considerations for the board historically in looking at the prohibited employment rule was in part looking at whether the plan was being used to subsidize work at lower wages that would compete against active employees. They didn't want to subsidize nonunion workers in the electrical industry, right? Yes and no. I think that's part of it. I think the issue is that the plan is meant to provide benefits to those who have retired. Those who haven't retired and intend to draw on the plan, who are still working in the industry and intend to draw benefits from the plan, is inconsistent with the purpose of the plan and would require the plan to change its actuarial assumptions in order to fund the benefits that are promised to employees. So what about the legal opinion, which takes the completely opposite side you're arguing and is more in line with Mr. O'Rourke's position? Lawyers' memos, there are two of them in the record. There's a March 2014 memo and then there's an August 2014 memo. There is also meeting minutes where those memos are discussed, and the board, after reading the first memo, felt that it did not take into account the prior decisions that the board had made and the prior discussions that the board had had over the years with regard to the prohibited employment rule. And the attorney went back and did look at those prior decisions and had a memo revised that the board considered in August of 2014. The prior decisions were not considered in the March 2014, the earlier memo. And the board had considerable discussion on the issue of whether the prohibited employment rule would prohibit work in the IBEW. And that was discussed over a course of many trustee meetings. This was not something that the board took too lightly. And the issue of political hostility that my colleague on the other side has raised, that is not evident from the record. The statements that Mr. O'Rourke identifies in his briefing are taken out of context. The statements with regard to the prohibited employment rule in Mr. O'Rourke's claim has to do with discussions that the board had regarding the historically broad reading of the prohibited employment rule to include positions that didn't necessarily involve the mechanical functions of an electrician. Go ahead. We're going to have to review this as an abuse of discretion, which gives, of course, your side a hand up, because abuse of discretion is a tough thing to find in most of these cases. But your opposition argued that it's not abuse of discretion here, it's with skepticism, whatever that means. So would you please give me your position as to our standard review for this case, and indicate to me why you think that using that, how would you deal with the issue argued that there should be skepticism in this case, because it is not, it sort of seeps through that there's an adversary process going on at various times as you read the record. Okay. Go ahead. Your Honor, the abuse of discretion standard is the applicable standard review here. The reference to the Abeyti case from the Ninth Circuit on Bonk that my colleague took into account does not lower the standard of review. It is still abuse of discretion. The court can look at a decision with some skepticism, where there is a procedural irregularity. And here there is no procedural irregularity. The board took into account many different points of view in coming to its ultimate decision. The political hostility is not apparent from the record before the court. The trustees did take a look at prior decisions to find that the board had in the past consider the prohibited employment rule for early retirees to be very broad. The other issue that was raised in the papers by my colleague on the other side had to do with changing reasons for denying. That is not the case. The board consistently on the claim and the appeal denial denied the claim and appeal based on the fact that Mr. O'Rourke was working in the electrical industry and therefore was subject to the prohibited employment rule. Thank you. I want to clear up one point. I think I heard Ms. Kang say that section 203 of ERISA is not applicable here. Section 203 of ERISA is applicable to all pension benefits. And it requires vesting non-forfeitability of all pension benefits. And the only exception that applies to multi-employer plans is the exception for working in the same industry, same trade or craft, and same geographic area. So it is not correct to say that section 203 does not apply to these pension benefits. This case is on all fours with the Brown case and the Tapley case, in both of which this Court found an abuse of discretion in suspending benefits for an early retiree who, because the suspension of benefits was not consistent with the plan terms. And this case is exactly that. Thank you. Okay. Thank you, Your Honor. Thank both of you for the argument this morning. The case just argued, O'Rourke v. Northern California. It's submitted and we're adjourned for the morning. All rise. This Court is in session to stand adjourned.
judges: Siler, Wallace, McKeown